## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## EASTERN DIVISION

ALBERT A. RICHARDSON
REG. #02597-025                                         PETITIONER


VS.                          2:10CV00006 JTR


T.C. OUTLAW, Warden,
FCC Forrest City                                       RESPONDENT

### MEMORANDUM AND ORDER

### I.  Background

Pending before the Court[1] is a § 2241 Petition for a Writ of Habeas Corpus

filed by Petitioner, Albert Richardson ("Richardson").[2]  (Docket entry #1).  In his

Petition, Richardson attacks the Bureau of Prisons' ("BOP") calculation of his

sentence.   Before addressing Richardson's claims, the Court will review the

procedural history underlying his conviction and  sentence.

On September 26, 2005, Richardson was arrested and detained by Illinois state

authorities for fleeing from a police officer.  (Docket entry #5-1 at 6).  On September

30, 2005, he bonded out of custody.  (Docket entry #5-1 at 6).

---

[1]The parties have consented to proceedings before a United States Magistrate
Judge.  (Docket entry #7).

[2]Richardson is currently incarcerated at FCC Forrest City.

On November 7, 2005, he entered a guilty plea and received a one-year sentence in the Illinois Department of Correction. On January 11, 2006, he was paroled, and released from the Illinois Department of Correction. (Docket entry #5-1 at 10). However, upon his release, he was transferred to the custody of Texas state authorities pursuant to a detainer/warrant lodged by the Grayston County (Texas) Sheriff's Office.[3]   (Docket en1try #5-1 at 20).   The alleged criminal conduct underlying the Texas warrant was for marijuana possession in 2003. (Docket entry #5-1 at 19).

On February 2, 2006, Richardson entered a guilty plea, in Grayston County, on the charge of possessing marijuana, and received a four-year sentence in the Texas Department of Criminal Justice. (Docket entry #5-1 at 30).

On February 23, 2006, while he was incarcerated in Texas, a federal grand jury, in the Southern District of Illinois, returned a sealed indictment charging him with various drug offenses that occurred in 2003 in Illinois.[4]  *United States v. Richardson*, S.D. Ill. No. 06CR300029 MJR at docket entry #1.  On February 24, 2006, a warrant

---

[3]On January 11, 2007, while Richardson was in the custody of Texas state authorities, he fully discharged his Illinois state sentence by completing his term of parole.

[4]The conduct underlying the federal drug charges took place on September 24, 2003, and was *unrelated* to the Texas state drug charges.  (Docket entry #5-1 at 41).

2

was issued for his arrest. *Richardson*, S.D. Ill. No. 06CR300029 MJR at docket entry #2.

At some point, federal authorities learned that Richardson was incarcerated in Texas state prison. On April 17, 2007, a writ of habeas corpus ad prosequendum was issued for his scheduled plea and arraignment in federal court in Illinois.[5] *Richardson*, S.D. Ill. No. 06CR300029 MJR at docket entries #7 and #9.

On May 21, 2007, Richardson appeared in the Southern District of Illinois for his plea and arraignment. *Richardson*, S.D. Ill. No. 06CR300029 MJR at docket entry #11. He waived a detention hearing.[6] *Richardson*, S.D. Ill. No. 06CR300029

---

[5] Primary jurisdiction over a criminal defendant is generally determined by which sovereign first obtains custody of, or arrests, the person. *United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005). Primary jurisdiction continues until the first sovereign relinquishes its priority in one of four ways: (1) release on bail; (2) dismissal of charges; (3) parole; or (4) expiration of sentence. *Cole*, 416 F.3d at 897.

When a prisoner is in state custody, serving a state sentence, and is brought to federal court with a writ of habeas corpus ad prosequendum, he remains in the "primary custody" of the state and is temporarily "on loan" to federal authorities. *See United States v. Hayes*, 535 F.3d 907, 910 (8th Cir. 2008). This is so even when the defendant remains in federal custody after the entry of an Order of Detention. *E.g., Davis v. Sniezek*, 2010 WL 50227171 (3rd Cir. Dec. 10, 2010) (state prisoner who appeared in federal jurisdiction on a writ of habeas corpus ad prosequendum and remained there following the entry of a detention order was still in the "primary jurisdiction" of the state); *Allen v. Stansberry*, 2010 WL 3671392 (E.D. Va. Sept. 14, 2010) (same).

[6] On May 21, 2007, Richardson executed a form in which he "waive[d] his right to a detention hearing [under the Bail Reform Act] and submit[ted] to pre-trial detention." *Richardson*, S.D. Ill. No. 06CR300029 MJR at docket entry #14.

MJR at docket entry #14).  The next day, an Order of Detention was entered, which included findings that: (1)  a preponderance of the evidence established that no condition or  combination of conditions would reasonably assure his appearance; (2) clear and convincing evidence established that no condition or combinations of conditions would  reasonably assure the safety of any other person and the community; (3) he had waived his right to a detention hearing; and (4) he was "in the custody of the Texas Department of Corrections on Texas state charges."[7] *Richardson*, S.D. Ill. No. 06CR300029 MJR at docket entry #16.

On September 17, 2007, while Richardson was still in the physical custody of federal authorities in Illinois, the Texas Department of Criminal Justice "released" him "under mandatory supervision."[8]  (Docket entry #5-1 at 39; docket entry #1 at

---

[7]After Richardson's detention in Illinois on the federal charges, he would never return to Texas.  The United States Marshal's "Prisoner Tracking System" documents that he was airlifted from Texas on May 11, 2007, and was thereafter continuously held as a federal prisoner in the Marion County Jail in Illinois.  He remained there throughout his federal prosecution, until he was eventually sentenced in federal court and transferred to the BOP.  (Docket entry #5-1 at 32-33).

[8]Under Texas law, "mandatory supervision" is defined as "the release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." Tex. Gov't Code Ann. § 508.001(5). The same statute defines "parole" as "the discretionary and conditional release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence under the supervision of the pardons and paroles division." Tex. Gov't Code Ann. § 508.001(6).

4

13).  In a "Certificate of Mandatory Supervision," he was instructed to report to a halfway house in Fort Worth, Texas, and informed that his sentence-expiration date, based on the successful completion of mandatory supervision, was December 21, 2009.  (Docket entry #6 at 12).

On December 18, 2007, the Texas Department of Criminal Justice sent the BOP a form titled "Status Inquiry" stating that Richardson "was released on MANDATORY SUPERVISION from the Texas of Department of Criminal Justice into the custody of your [BOP] agents on September 17, 2007, and is subject to supervision on the Texas sentence until 12/21/2009.   OUR INTEREST IS SUPERVISION ONLY.   PLEASE RETAIN A COPY OF THIS FORM IN [Richardson's] FILE AND NOTIFY THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE . . . WHEN [Richardson] IS RELEASED OR TRANSFERRED [from the BOP]."  (Docket entry #1 at 13) (emphasis in original).

On March 20, 2008, Richardson entered a guilty plea on the federal drug charges.  *Richardson*, S.D. Ill. No. 06CR300029 MJR at docket entry #35.

On July 11, 2008, he was sentenced to seventy months in the BOP. *Richardson*, S.D. Ill. No. 06CR300029 MJR at docket entry #41. His Judgment provided that his federal sentence was to be "served concurrently to . . . the

undischarged sentence imposed in [Texas state court]."[9] Thereafter, he was remanded to the custody of the BOP to serve his sentence.[10]

The BOP calculated his seventy-month sentence to commence on July 11, 2008, the date the sentence was imposed. (Docket entry #1 at 26). Its calculation gave him 297 days of credit for time spent in custody, from September 18, 2007 (the day after his release to mandatory supervision on his Texas state sentence), until July 10, 2008 (the day before his federal sentence was imposed). *Id.* Based on this calculation, the BOP projected Richardson's release date to be October 16, 2012. *Id.*

---

[9]Richardson's presentence report ("PSR"), which was prepared on May 30, 2008, contains a criminal history section that mistakenly stated that his "projected parole date" on the Texas sentence was September 1, 2007, and that he was "presently in federal custody on a writ from the Texas Department of Criminal Justice." (Docket entry #5-1 at 20). This implied that he still had prison time to serve on his Texas sentence, *i.e.*, he was still awaiting "projected parole," when, in fact, he had been "released" to "mandatory supervision" months earlier on September 17, 2007, and no longer had prison time to serve in Texas. (Docket entry #5-1 at 19-20).

During Richardson's sentencing hearing, defense counsel "ask[ed] the Court [to] determine this sentence is to run concurrent with any sentence on the Grayson County Texas charge in paragraph 41 of the [PSR]." *Sent. Hear. Tr.*, S.D. Ill. 3:06CR30029 docket entry #60 at 4. The Government stated that it did not object to that request. *Id.* The Court later announced that its sentence would be "concurrent with the undischarged term in case number 51310 [the Texas sentence]." *Sent. Hear. Tr.*, S.D. Ill. 3:06CR30029 docket entry #60 at 7.

[10]On December 29, 2009, while still in BOP custody, Richardson completely discharged his Texas state sentence. (Docket entry #5-1 at 39).

6

Richardson pursued BOP administrative remedies arguing that his sentence had not been properly calculated. His main argument was that, because his federal sentence was ordered to run concurrent with his "undischarged" Texas state sentence, he was entitled to continuous jail credit beginning on December 21, 2005, the date he first started serving his Texas state sentence.[11]

The BOP denied his claim and his appeal was unsuccessful. The BOP took the position that Richardson was not entitled to federal credit for time that Texas authorities applied to his Texas sentence, and that his "release" or "parole" by Texas authorities, on September 17, 2007, mooted the question of concurrence. Accordingly, the BOP held that because he was: "released from this state sentence prior to the imposition of your federal sentence, [BOP] staff were unable to compute your federal sentence to a [state] sentence which had previously been served." (Docket entry #1 at 17).

On January 19, 2010, Richardson filed this § 2241 habeas action (docket entry #1), in which he argues that: (1) the BOP is not properly calculating his sentence

---

[11] According to a Texas Department of Criminal Justice "Commitment Inquiry," his Texas sentence "began" on December 21, 2005. (Docket entry #5-1 at 30). However, as indicated earlier, he was paroled from his Illinois state sentence, and first transferred to Texas state authorities on a detainer, on January 11, 2006. The record is unclear as to why Texas state authorities calculated his sentence to begin on December 21, 2005, rather than January 11, 2006. Neither party sheds any light on this discrepancy.

7

consistent with the sentencing judge's Order; (2) the BOP has failed to designate the state institution as the place for service of his federal sentence; and (3) the BOP has failed to issue him a "nunc pro tunc" designation to prevent him from receiving "*Willis*" prior custody credits.[12]   (Docket entries #1 and #2). Respondent has filed a Response (docket entry #5), to which Richardson has filed multiple Replies.  (Docket entries #6, #9, and #10).

For the reasons explained below, the Court concludes that all of Richardson's habeas claims are without merit.

## II.  Discussion

### A.    The BOP Did Not Err is Calculating Richardson's Sentence

The calculation of a federal sentence is governed by 18 U.S.C. § 3585, which defines when a federal sentence "commences," and then establishes when a defendant is entitled to credit for time "spent in official detention prior to the date the sentence commences[.]"   Under 18 U.S.C. § 3585(a), a defendant's federal   sentence "commences"  when he "is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."  The earliest date a federal sentence can "commence"

---

[12]On February 16, 2010 Richardson filed an Amended Petition.  (Docket entry #2).

is the date that it is imposed.  *See* BOP Program Statement 5880.28, Ch. 1 at Page 13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed.");  *United States v. LaBeille-Soto*, 163 F.3d 93, 98 (2nd Cir. 1998) ("We see nothing in [§ 3585(a)] to indicate that the court is permitted to order that the sentence be deemed to have commenced on an earlier date [than the date of imposition].")

In this case, the BOP determined that Richardson's sentence commenced on July 11, 2008, the day it was imposed.[13]  As a matter of law, this is the earliest possible date that his federal sentence could commence.  According to the statute, the BOP must next calculate any prior custody credit:

> (b) Credit for Prior Custody. — A defendant shall be given credit toward the service of a term of imprisonment for any *time he has spent in official detention* prior to the date the sentence commences —
>
> > (1) as a result of the offense for which the sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

---

[13]"Only the BOP has the authority to determine when a federal sentence commences." *United States v. Haynes*, 535 F.3d 907, 910 (8th Cir. 2008) *(citing United States v. Wilson*, 503 U.S. 329, 335 (1992)). "While nothing prevents the sentencing judge from making recommendations to the BOP, the determination of the commencement date and the designation of the place at which the sentence is to be served remains with the BOP." *Id.*

*that has not been credited against another sentence.*

18 U.S.C. § 3585(b) (emphasis added).

It is undisputed that the entire time period for which Richardson requests seeks custody credit (from December 21, 2005, through September 17, 2007) is time *which was credited by the Texas Department of Criminal Justice to his Texas state sentence.* (Docket entry #5-1 at 39; docket entry #1 at 13). Thus, under 18 U.S.C. § 3585(b), the BOP was prohibited from crediting this time toward Richardson's federal sentence. *See United States v. Kramer*, 12 F.3d 130, 132 (8th Cir. 1993) ("the Bureau of Prisons properly decided not to award [defendant] credit for the time served [in state custody], as it would have contravened the proscription in 18 U.S.C. § 3585(b) against double crediting."); *Gross v. Berkebile*, 2011 WL 13874, *4 (E.D. Ky. 2011) ("Since 1987, awarding a prisoner with "double credit" for time credited toward another sentence is specifically prohibited by 18 U.S.C. § 3585(b)."); *Craft v. Anderson*, 2010 WL 4629622, *1 (W.D. Mo. Oct.14, 2010) ("If a petitioner were allowed federal credit for time spent serving a sentence imposed by a state court, he would be receiving double credit, contrary to 18 U.S.C. § 3585(b).")

In an effort to avoid the double-credit bar of 18 U.S.C. § 3585(b), Richardson argues that the federal sentencing court ordered his sentence to run concurrent with his "undischarged" state sentence. The imposition of a concurrent sentence is

governed by 18 U.S.C. § 3584(a): "if a term of imprisonment is imposed on a defendant who is *already subject to an undischarged term of imprisonment*, the terms may run concurrently or consecutively[.]" (Emphasis added).  As indicated earlier, it is the BOP's position that Richardson's release to mandatory supervision "discharged" his "term of imprisonment" on the Texas sentence so that there was no longer any "undischarged term of imprisonment" against which the federal sentence could run concurrently.  Richardson goes to great lengths to argue that, because he was still on  "mandatory supervision" on his Texas state sentence, it somehow remained an "undischarged term of imprisonment" for purposes of running a concurrent federal sentence under 18 U.S.C. § 3584(a).[14]

The Court agrees with the BOP's position, which is consistent with the plain language of the statute.  When Richardson's federal sentence was imposed, he no longer had any term of "imprisonment" left to serve in Texas and was only subject to

---

[14]Richardson relies on *United States v. French*, 46 F.3d 710 (8th Cir. 1995), where the Court held that a South Dakota parolee was subject to an "undischarged term of imprisonment," as that term is used in  U.S.S.G. § 5G1.3(b), in determining if he was properly given credit for time served for a state conviction.

*French* is distinguishable because it involves an interpretation of the United States Sentencing Guidelines, not 18 U.S.C. § 3584(a).  Moreover, it involved an interpretation of a South Dakota state law which provided that parolees remained "confined" in the South Dakota Department of Correction.  In this case, the Texas Department of Criminal Justice unequivocally "released [Richardson] on mandatory supervision from the Texas Department of Criminal Justice into the custody of your [BOP] agents on 09/17/2007."  (Docket entry #1 at 13).

11

supervision.  Moreover, even if Richardson is correct that, at the time his federal sentence was imposed, his Texas mandatory supervision was somehow an "undischarged term of imprisonment" for purposes of concurrency, there is *no authority* to support the proposition that a federal sentence can be made "retroactively" concurrent, to a date prior to its imposition, and then be deemed to have commenced  on the date of imposition of the prior state sentence.  To the contrary, federal courts have uniformly rejected this proposition.  *See Shelvy v. Whitfiled*, 718 F.2d 441, 444 (D.C. Cir. 1983) ("a federal sentence made concurrent with a sentence already being served does not operate in a 'fully concurrent' manner . . . the second sentence runs together with the remainder of the one then being served"); *Demartino v. Thompson*, 116 F.3d 1489 (10th Cir. 1997) (table decision) ("Logically, [a federal sentence] cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served.") (internal quotations omitted); *Dominguez v. Williamson,* 251 F.3d 156 (5th Cir. 2001) (table decision) ("It remains true that a prisoner technically receives 'double credit' for both their federal and state sentences if the sentences are ordered to run concurrently. But a prisoner cannot retroactively receive federal credit for time previously served in state prison, because 'sentences [cannot] be concurrent in the sense of having the same starting date because a federal sentence cannot commence prior to the date it is pronounced,

12

even if made concurrent with a sentence already being served.'") (*quoting United States v. Flores*, 616 F.3d 840, 841 (5th Cir. 1980)); *Wilson v. Henderson*, 468 F.2d 582, 584 (5th Cir. 1972) ("A sentence cannot commence prior to the date it is pronounced even if it is to be concurrent to a sentence already being served."); *Isles v. Chester*, 2009 WL 1010553 (D. Kan. April 15, 2009) ("To the extent petitioner is contending . . . that 'concurrent' meant his federal sentence commenced prior to the date he was sentenced in federal court, that argument is rejected. Concurrent sentences normally mean that the sentence being imposed will run concurrently with the undischarged portion of a previously imposed sentence.").

Richardson cites one case, *Ruggiano v. Reish*, 307 F.3d 121 (3rd. Cir. 2002), which recognizes the possibility of a "retroactively concurrent" sentence. However, *Ruggiano* does not stand for the proposition stated by Richardson — that a federal sentence can commence on the date of a previously-imposed state sentence. Rather, the "retroactively concurrent sentence" in *Ruggiano* was a sentence adjustment under the then-applicable provision of the Sentencing Guidelines (U.S.S.G. § 5G1.3) that was intended to credit the defendant with time already served on a state sentence.[15]

---

[15]Not coincidentally, Richardson has filed a § 2255 Motion in the Southern District of Illinois arguing, among other things, that his lawyer was ineffective for failing to request an adjustment of his sentence to account for the time he spent in Texas state prison: "it appears that Richardson's counsel Mr. Elovitz had no basis to request a concurrent sentence, since Richardson had been granted parole/mandatory

13

In *Ruggiano*, the sentencing judge stated: "[federal] sentence imposed to run concurrent with state sentence.   Defendant to receive credit for time served [on previously imposed state sentence]." *Id.* at 132.   The Third Circuit held that this language evidenced the sentencing judge's intent to grant a Guidelines adjustment by making the federal sentence "retroactively concurrent" for the entire period of the state sentence pursuant to § 5G1.3(c). Thus, while the trial court announced a 112 month sentence, it actually intended to sentence the defendant to 112 months *minus* the 14 months he had already served in state prison, for a term of imprisonment of 98 months.   In making this determination, the Third Circuit noted that imposing a concurrent sentence retroactively to coincide with time served on a pre-existing

---

supervision in relation [the Texas case] prior to [federal] sentencing on September 17, 2007, but he had a firm basis which to move the court for a Downward Departure under U.S.S.G. § 5G1.3(c)[.]" *Richardson v. United States*, S.D. Ill. No. 3:09CV00498 MJR docket entry #1-1 at 5.  At this time, his § 2255 Motion remains pending.

Interestingly, the Government's § 2255 Response acknowledges that, in its plea negotiations with Richardson, it recognized that he had "lost opportunity" to have a portion of his federal sentence credited for his time in Texas state prison. According to the Government's Response, it sought to give Richardson credit for this "lost opportunity" by recommencing a larger than usual §5K1.1 downward departure. *Richardson v. United States*, S.D. Ill. No. 3:09CV00498 MJR docket entry #14 at 8-9. In an affidavit from Richardson's defense counsel, he states that he negotiated a 46 percent § 5K1.1 downward departure (from a 130-month guideline sentence down to a 70-month sentence after downward departure), which was greater than the one-third § 5K1.1 downward departure that was typical in the Southern District of Illinois. *Richardson v. United States*, S.D. Ill. No. 3:09CV00498 MJR docket entry #14-1.

14

sentence is properly termed an "adjustment," and not a "credit" or "downward departure." *Id.* at 133.

In sharp contrast to *Ruggiano*, the sentencing judge in this case unequivocally sentenced Richardson to seventy months, with no reference to any past credit, and merely stated that the seventy months would run concurrent with the "undischarged" term left on the Texas sentence.   In his habeas papers, Richardson incorrectly represents that the sentencing judge stated Richardson was "to serve 61 months for his federal and state concurrent sentence, which made his sentence truly concurrent." (Docket entry #9 at 9).  In fact, the sentencing judge simply referenced the possibility of earning good time credits in the BOP: "you are looking at 70 months . . . if you are completely cooperative while in custody of the [BOP] and you engage in all of the programs and don't get in any trouble, you can get another 275 days knocked off that, which means you would end up doing five years and 30 days."   *Sent. Hear. Tr.*, S.D. 3:06CR30029 docket entry #60 at 12-13.

Accordingly, the Court concludes that the BOP properly calculated Richardson's sentence.

## B.   The BOP Did Not Abuse Its Discretion in Denying Richardson's Request for a "Nunc Pro Tunc" Designation

Next Richardson argues that, because the BOP is "not designating the State

Institution for the service of my federal sentence," he is entitled to a so-called "nunc pro tunc" designation.  (Docket entry #1 at 4).  A "nunc pro tunc" designation allows the BOP to designate a state institution as the place for service of a federal sentence:

> When a federal court imposes a prison sentence, Congress has authorized the BOP to designate "any available penal or correctional facility that meets minimum standards of health and habitability ... whether maintained by the Federal Government or otherwise." 18 U.S.C. § 3621(b). This statute "provides the BOP with broad discretion to choose the location of an inmate's imprisonment," so long as the factors enumerated in the statute are considered. *Fults v. Sanders*, 442 F.3d 1088, 1090-91 (8th Cir. 2006). A federal sentence "commences on the date the defendant is received in custody [at] the official detention facility" designated by the BOP. 18 U.S.C. § 3585(a). Thus, when a federal defendant is already serving a state sentence, BOP has the practical power to "make the federal sentence run concurrently by designating the state prison as a place of federal confinement, so that the clock would start to tick on the federal sentence." *Romandine v. United States*, 206 F.3d 731, 738 (7th Cir. 2000).

*Fegans v. United States*, 506 F.3d 1101, 1103 (8th Cir. 2007); *see also* BOP Program Statement 5160.05.

The nunc pro tunc designation addresses situations where a defendant is sentenced in federal court but is *not* thereafter placed in BOP custody to commence service of the federal sentence.[16]  This time spent in state custody creates a gap between the date of the imposition of the federal sentence and the date the inmate is

---

[16]These situations occur in cases where, *after* federal sentencing, a defendant is placed in state custody to serve a previously imposed, or even a yet-to-be imposed, state sentence.

received at a federal detention facility.  In this context,  the BOP "has the practical power to 'make the federal sentence run concurrently by designating the state prison as a place of federal confinement, so that the clock would start to tick on the federal sentence.'" *See Fegans*, 506 F.3d at 1103 *(quoting Romandine v. United States*, 206 F.3d 731, 738 (7th Cir.2000)).

In Richardson's case, the "clock started to tick" on his federal sentence *at the time it was imposed* because he was immediately placed in the BOP to serve his federal sentence.  Richardson cites to no authority for the proposition that a nunc pro tunc designation can be made retroactive to time spent in a state institution that *precedes the imposition of a federal sentence*.  Thus, the BOP did not abuse its discretion in denying Richardson's request for a nunc pro tunc designation.

### C.    The BOP Did Not Err in Denying Richardson *"Willis"* Credits

Finally, Richardson argues that "the [BOP] is not issuing a Nunc Pro Tunc designation, to prevent me from receiving *Willis* time credits to my sentence." (Docket entry # 2 at 1). He claims that these federal credits should apply to the entire length of his Texas state sentence, from December 21, 2005, until September 17, 2007.

So-called "*Willis*" credits are a "double counting" exception  adopted by the BOP after the Fifth Circuit's decision in *Willis v. United States*, 438 F.2d 923 (5th

Cir. 1971).   *See Davis v. Schultz*, 2010 WL 5392649, *3 (D. N.J. 2010) (*Willis*

credits are for "time spent in non-federal pre-sentence custody during which the

inmate is denied bail because of a federal detainer"); *Azure v. Gallegos*, 97 Fed.

Appx. 240 (10th Cir. 2004) ("The court's concern [in *Willis*] was that the defendant

initially spent time in state custody subject to a federal detainer, and he should get

federal credit for that time.").   The BOP refers to these as "*Willis*" credits.[17]

The BOP concluded that Richardson was not eligible for *Willis* credits because

he did not have concurrent state and federal sentences: "*Willis* . . . does not apply.

Released from Texas case prior to federal sentence."   (Docket entry #1 at 14).

The Court agrees.   As discussed earlier, Richardson had already been released

from the Texas Department of Criminal Justice at the time his federal sentence was

imposed.   Thus, there was no "undischarged term of [state] imprisonment" against

which the federal sentence could run concurrently.   Without concurrent state and

federal sentences, the *Willis* exception can not be applied.

Finally, even if Richardson's period of "mandatory supervision" satisfied the

---

[17]BOP Program Statement 5880.28(2)(c) provides that, if a prisoner's federal
and state sentences are concurrent, and the federal sentence is to run longer than the
state sentence (not counting any credits), "[p]rior custody credits shall be given for
any time spent in non-federal presentence custody that begins on or after the date of
the federal offense up to the date that the first sentence begins to run, federal or
non-federal." Program Statement 5880.28(2)(c).

requirement for concurrency, *Willis* credits still would be inapplicable because he was never in Texas "presentence" custody while under a federal detainer.  On January 11, 2006, Richardson was released from Illinois state custody to Texas state authorities on a *Texas state detainer*.  On February 2, 2006, he was sentenced in Texas state court.  On February 23, 2006, he was indicted in the Southern District of Illinois and an arrest warrant was issued.  Thus, a federal detainer was in no way involved with or responsible for his Texas "pre-sentence" custody from January 11, 2006, to February 2, 2006.[18]

### III.  Conclusion

IT IS THEREFORE ORDERED THAT the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (docket entries #1 and #2) is DENIED, and this case is DISMISSED, WITH PREJUDICE

Dated this 17th day of February, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

---

[18]Richardson complains that, after his Texas state sentence was imposed, he would have made parole but for the federal detainer arising from the federal arrest warrant.  This is beside the point.  *Willis* credits are designed to address "non-federal presentence custody," not time served *after* a state sentence is imposed.